IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-02193-PAB-TPO

BMZ USA INC.,

    Plaintiff,

v.

XL HYBRIDS INC., and
SPRUCE POWER HOLDING CORP. f/k/a and d/b/a XL FLEET,

    Defendants.

---

## ORDER

---

This matter comes before the Court on defendants' Corrected Motion to Dismiss [Docket No. 14]. Defendants XL Hybrids Inc. ("XL Hybrids") and Spruce Power Holding Corp. ("Spruce") move to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the claims brought against them by plaintiff BMZ USA Inc. ("BMZ"). Docket No. 14 at 1-2. BMZ filed a response, Docket No. 17, and defendants filed a reply. Docket No. 20. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

### I. BACKGROUND[1]

    **A. Underlying Contract and Litigation**

Plaintiff BMZ is a Virginia corporation with its principal place of business in Virginia. Docket No. 6 at 2, ¶ 2. BMZ produces and sells high-tech, rechargeable

---

[1] The facts below are taken from plaintiff's complaint, Docket No. 6, and are presumed to be true, unless otherwise noted, for purposes of ruling on defendants' motion to dismiss.

customized battery systems for commercial applications. *Id.*, ¶ 8. Defendant XL Hybrids is a Delaware corporation with a principal place of business in Boston, Massachusetts. *Id.*, ¶ 3. XL Hybrids provided services for the upfitting of commercial and municipal fleets whereby customers would purchase vehicles from manufacturers such as Ford or General Motors, have the vehicles delivered to XL Hybrids, and XL Hybrids would add components that allowed vehicles to be driven by electrical power in addition to gasoline power. *Id.* at 2-3, ¶ 9. Defendant Spruce is a Delaware corporation with its principal place of business in Denver, Colorado. *Id.* at 2, ¶ 4. At all relevant times, XL Hybrids and Spruce conducted business together as XL Fleet. *Id.*, ¶ 5.

In or about January 2018, XL Hybrids, acting as XL Fleet, issued a "Request for Quote" seeking to procure "an automotive-grade battery pack to be part of [XL Fleet's] PHEV powertrain." *Id.* at 3, ¶ 10. In or about November 2019, BMZ and XL Hybrids negotiated the terms of an agreement whereby BMZ would provide batteries for use in XL Hybrids' operation. *Id.*, ¶ 12. The negotiations culminated in the execution of a Master Supply Agreement between BMZ and XL Hybrids dated December 4, 2019 (the "MSA"). *Id.*, ¶ 14.

On July 28, 2020, BMZ received authorization to begin producing batteries under the MSA. *Id.*, ¶ 16. The authorization letter contains letterhead for "XL Fleet Electrification," and states, "XL Fleet confirms that it has . . . requested [BMZ] to start production activities." *Id.* at 4, ¶ 17. On January 13, 2022, the Vice President of Supply Chain & Production of XL Fleet emailed BMZ as follows: "Upon further review of component needs, XL Fleet has decided to cancel the balance of PO #002030." *Id.*, ¶ 20.

2

Defendants' abrupt cancellation of the parties' relationship resulted in BMZ filing litigation in the Circuit Court for the City of Virginia Beach in Virginia entitled *BMZ USA, Inc. v. XL Hybrids, Inc.*, Case No. CL22-633 (the "Virginia Litigation"). *Id.*, ¶ 21. The Virginia Litigation culminated in a three-day bench trial in December 2023. *Id.*, ¶ 23. After trial, the court entered judgment on February 15, 2024 in favor of BMZ and against XL Hybrids in the amount of $3,782,285.45. *Id.*, ¶ 24. The judgment awarded to BMZ has not been satisfied. *Id.* at 5, ¶ 25.

### B. Relationship between XL Hybrids and XL Fleet

At all relevant times, BMZ understood and believed that it was conducting business with a single entity known and doing business as XL Fleet. *Id.*, ¶ 26. The "Request for Quote" listed a website of www.xlfleet.com and contact information for the Supply Chain manager of XL Hybrids as etepper@xlfleet.com. *Id.* at 3, ¶ 11. Emails exchanged between representatives for BMZ, on the one hand, and XL Hybrids, on the other, were sent to and from individuals appearing to work for "XL Fleet" with signature blocks reading "XL Fleet Electrification" and included email addresses ending in "@xlfleet.com. *Id.*, ¶ 13. The MSA includes a Certificate of Conformance which lists the Customer Address as "XL Fleet, 145 Newton Street, Boston, MA 02135." *Id.*, ¶ 15. Between July 2020 and January 2022, BMZ and representatives for defendants shared numerous electronic communications. *Id.* at 4, ¶ 19. At all times, the communications from defendants' representatives contained signature blocks which read "XL Fleet," and the individual email addresses for all defendant contacts ended in "@xlfleet.com." *Id.*, ¶ 19. During the Virginia Litigation, defendants' director of product development, Art Cogan, testified under oath during a deposition that there was no distinction between XL Hybrids and XL Fleet and that the company did business as XL Fleet. *Id.*, ¶ 22.

C. **SPAC Transaction**

Unbeknownst to BMZ, from approximately July 2019 onward, defendants were engaged in a series of reorganizations and name changes while holding themselves out to the world, and conducting business with BMZ, as XL Fleet. *Id.* at 5, ¶ 27. In or about early 2019, Pivotal Investment Corporation II ("Pivotal") was formed as a special purpose acquisition company ("SPAC") for the purpose of later acquiring XL Hybrids. *Id.*, ¶ 28. In furtherance of these efforts, XL Hybrids and Pivotal provided potential investors with an Investor Presentation slide deck which states it was prepared as a marketing tool with respect to a "potential business combination between XL Hybrids, Inc. (doing business as XL Fleet) ("XL") and [Pivotal]." *Id.*, ¶ 29. In a Securities and Exchange Commission ("SEC") filing dated December 8, 2020, Pivotal reported certain financial information for XL Hybrids. *Id.* at 5-6, ¶ 30. The filing noted XL Hybrids was in a precarious liquidity situation. *Id.* at 6, ¶ 31. The filing stated that "XL" expected that, with the funds raised in connection with the SPAC transaction, it would have the necessary capital to execute its business plan over the next year. *Id.* However, the filing also stated that, because XL's business would face difficulties without access to the necessary capital, there was "substantial doubt about XL's ability to continue as a going concern for at least one year from the date of this proxy statement/prospectus." *Id.* at 7, ¶ 31.

On or about December 21, 2020, Pivotal closed on a reverse triangular merger with XL Hybrids, changed the name of the corporation to XL Fleet Corp., and continued doing business with BMZ, and the world, as XL Fleet. *Id.*, ¶ 32. The merger caused all shares of XL Hybrids to be converted into shares of XL Fleet, with XL Hybrids becoming a wholly-owned subsidiary of XL Fleet. *Id.*, ¶ 33. Officers of XL Hybrids became

4

officers of XL Fleet.  *Id.*, ¶ 34.  Other members of XL Hybrids' board of directors joined XL Fleet's board of directors.  *Id.*, ¶ 35.  After the merger, XL Fleet operated out of XL Hybrids' previous principal address of 145 Newton Street, Boston, MA 02135.  *Id.* at 8, ¶ 36.

In a 10-K filed with the SEC on March 31, 2021, XL Fleet stated that "[XL Hybrids] was deemed the accounting predecessor of [the merged entities] and is the successor registrant for SEC purposes."  *Id.*, ¶ 38.  The filing further stated that "[t]he Merger is accounted for as a reverse recapitalization.  Under this method of accounting, Pivotal is treated as the acquired company for financial statement reporting purposes."  *Id.*, ¶ 39.

On or about November 14, 2022, XL Fleet Corp. changed its name to Spruce Power Holding Corp.  *Id.* at 9, ¶ 42.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to

5

accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III. ANALYSIS

BMZ brings two claims against defendants: one for veil piercing and one for successor liability. Docket No. 6 at 12-13, ¶¶ 58-76. Both claims are meant to enable BMZ to enforce against defendants the judgment from the Virginia Litigation. *Id.* at 13, ¶¶ 70, 76. Defendants move to dismiss both of BMZ's claims. Docket No. 14 at 1-2. The parties agree that both claims are governed by Delaware law. *See* Docket No. 14 at 4-5; Docket No. 17 at 3 n.2.

6

A. <u>Veil-Piercing</u>

BMZ asserts its entitlement to recover the Virginia Litigation judgment against both defendants under a veil-piercing theory. Docket No. 6 at 12-13, ¶¶ 58-70. To state a veil-piercing claim under Delaware law, "the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003). Under Delaware law, "[v]eil piercing is a tough thing to plead and a tougher thing to get, and for good reason." *PXP Producing Co. LLC v. MitEnergy Upstream LLC*, 342 A.3d 402, 416 (Del. Ch. 2025) (citation omitted). "Delaware public policy does not lightly disregard the separate corporate form." *Id.* (internal quotations and citation omitted). Courts in Delaware disregard the corporate form only in exceptional cases. *Id.* at 416-17.

There are two elements to a veil-piercing claim. *Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, at *2-3 (Del. Ch. July 1, 2005). For the first element, a plaintiff must show that the defendant was an alter ego of the corporation. *Id.* Whether the defendant is an alter ego of the corporation turns on an inquiry that considers factors such as "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *PXP Producing Co.*, 342 A.3d at 417*; see also Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008). No one factor is dispositive in this analysis. *PXP Producing Co.*, 342 A.3d at 417; *Mason*, 2005 WL 1653954, at *3.

7

For the second element, a plaintiff must show some aspect of fraud, injustice, or unfairness. *PXP Producing Co.*, 342 A.3d at 417; *Mason*, 2005 WL 1653954, at *3. The Court finds that BMZ has failed to adequately plead this second element.[2] For this element, BMZ must plead allegations to support a finding that "the corporation [is] a sham and exist[s] for no other purpose than as a vehicle for fraud." *Mason*, 2005 WL 1653954, at *3 (quoting *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch.1999)); *see also Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 716 (Del. Ch. 2021). Delaware courts have stated that, unless the corporation was formed for the purpose of the fraudulent, unjust, or unfair activity, veil piercing is not appropriate. *See Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530, 531 (D. Del. 2008) (applying Delaware law and finding that a claim failed under the "fraud, injustice, or inequity" element when the plaintiffs failed to plead facts that the defendants "created a sham entity designed to defraud investors and creditors.") (internal quotation and citation omitted); *PXP Producing*, 342 A.3d at 417 ("the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.") (citation omitted); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989) (applying Delaware law and finding, in a patent case, that veil piercing was not appropriate because "it can hardly be said that the Delaware corporation was formed for the purpose of infringing Mobil's patents.").

In *Manichaean Cap.*, the court held that "[a]cts intended to leave a debtor judgment proof are sufficient to show fraud and injustice." 251 A.3d at 708-09. There, a

---

[2] Given the Court's finding, it does not reach the question of whether BMZ has alleged facts that support the factors relevant to the "alter ego" element.

judgment debtor, mere weeks before the entry of the judgment, entered into financial arrangements that diverted pending payments to the judgment debtor to other, related companies. *Id.* at 701-04. The managers of the judgment debtor knew that the payments they were diverting would otherwise go to pay the judgment, and that the company would be unable to pay the judgment once those funds had been diverted. *Id.* at 708-09. Similarly, in *Compagnie des Grands Hotels d'Afrique S.A. v. Starwood Cap. Grp. Glob. I LLC*, 2019 WL 148454 (D. Del. Jan. 9, 2019) ("*Grands Hotels*") (applying Delaware law), a judgment debtor transferred control of a property to another company. *Id.* at *1-3. The transferee company had been incorporated only six weeks before the initiation of the arbitration that led to the judgment, there were shared connections between the transferee and transferor, and the transfer occurred shortly after the initiation of the arbitration. *Id.* at *1-3, *5. The court found that these allegations were sufficient to plead a veil-piercing claim. *Id.* at *5.

BMZ fails to allege facts that plausibly support a finding of fraud, injustice, or unfairness for purposes of the second element. The complaint alleges that Pivotal was formed in early 2019 for purposes of acquiring XL Hybrids. Docket No. 6 at 5, ¶ 28. Beginning in July 2019, XL Hybrids began a series of reorganizations and name changes. *Id.*, ¶ 27. In an SEC filing dated December 8, 2020, Pivotal disclosed that XL Hybrids had a large capital deficit and there was substantial doubt about its ability to continue as a going concern. *Id.* at 5-6, ¶ 30. In late December 2020, Pivotal closed on a reverse triangular merger with XL Hybrids and changed the name of the corporation to XL Fleet Corp. *Id.* at 7, ¶ 32. The merger caused all outstanding convertible debt held by creditors of XL Hybrids to either be paid off or converted into shares of XL Fleet. *Id.*,

9

¶ 33.  None of these allegations plausibly support that XL Fleet Corp. was created for no other purpose than a fraudulent one.  *See PXP Producing*, 342 A.3d at 417.  Rather, the allegations are reasonably understood to show that XL Hybrids had liquidity problems, that Pivotal was formed to address them, that a merger took place, and that, as a result of the merger, XL Hybrids debt holders received shares of XL Fleet.  Such allegations demonstrate a legitimate reason for the formation of the new entity.  No well-pled allegations in the complaint suggest that the reorganization activity was intended to defraud plaintiff or any other contractors.  The fact that the alleged breach of contract occurred on January 13, 2022, Docket No. 6 at 4, ¶ 20, over a year after the December 21, 2020 SPAC transaction, *id.* at 7, ¶ 32, further supports this conclusion.

To the extent BMZ asserts that there was injustice or unfairness because Spruce, as the parent company of XL Hybrids, is not supporting XL Hybrids in satisfying a judgment, the Court finds no support for the argument under Delaware law.  The failure of a parent company to support an insolvent subsidiary is not unjust or unfair under Delaware law; to hold otherwise would mean that "every parent of an insolvent company would have to support it, completely blurring corporate lines."  *In re Opus East, LLC*, 528 B.R. 30, 66 (Bankr. D. Del. 2015), *aff'd*, 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd*, 698 F. App'x 711 (3d Cir. 2017) (unpublished) (applying Delaware law).  Indeed, "Delaware courts have held that the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil."  *Trevino*, 583 F. Supp. 2d at 530 (citing *Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005)).

Because the Court finds that BMZ has failed to plead one of the two components of a veil-piercing claim, the Court will dismiss BMZ's first claim without prejudice.

### B. Successor Liability

BMZ also asserts a claim to recover the Virginia Litigation judgment from defendants under a theory of successor liability. Docket No. 6 at 13, ¶¶ 71-76. According to the complaint, Spruce is a "mere continuation of XL Hybrids," *id.*, ¶ 75, and therefore BMZ is entitled to enforce the judgment against it.

Under Delaware law, "[a]bsent unusual circumstances a successor corporation is liable only for liabilities it expressly assumes." *Mason*, 2005 WL 1653954, at *5 (internal quotation and citation omitted). There are four exceptions to the general rule: (1) the buyer's assumption of liability; (2) de facto merger or consolidation; (3) mere continuation of the predecessor under a different name; or (4) fraud. *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *15 (Del. Ch. Sept. 5, 2023) (citing *Ross v. Desa Holdings Corp.*, 2008 WL 4899226, at *4 (Del. Super. Ct. Sept. 30, 2008)). BMZ argues that the "mere continuation" exception applies. Docket No. 17 at 14-15. The "mere continuation" exception has been construed "very narrowly to require the purchaser of the assets to be a continuation of "the same legal entity," not just a continuation of the same business in which the seller of the assets engaged." *Spring Real Est., LLC v. Echo/RT Holdings, LLC*, 2013 WL 6916277, at *5 (Del. Ch. Dec. 31, 2013). The "'primary elements' of being the same legal entity" include "the common identity of the officers, directors, or stockholders of the predecessor and successor corporations, and the existence of only one corporation at the completion of the transfer. *Id.*

11

BMZ's allegations do not support a finding of "mere continuation."  First, BMZ does not allege that only one corporation existed at the completion of the merger; to the contrary, BMZ alleges that XL Hybrids is a subsidiary of Spruce.  Docket No. 6 at 7, ¶ 33.  Moreover, BMZ does not allege the common identity of officers, directors, or stockholders of the predecessor and successor corporation.  Although BMZ asserts that officers and directors of XL Hybrids joined Spruce, BMZ identifies only two officers and one director who made that transition.  *Id.*, ¶¶ 34-35.  BMZ does not allege that these individuals constitute all of XL Fleet's officers and directors.  For the "common identity" analysis, BMZ must show that the new entity retained "all or substantially all of the ownership and control" of the old entity.  *Ross*, 2008 WL 4899226, at *4.  In *Ross*, the new entity retained from the old entity five of the seven officers, one of the six directors, and "virtually all" of the old entity's managers.  *Id.*  The court found that this overlap did not rise to the level of "mere continuation," especially given that the old entity continued to exist after the transaction.  *Id.*  The Court finds that BMZ's factual allegations are comparable to the facts at issue in *Ross* and that, for the reasons articulated in *Ross*, BMZ's claim for successor liability fails.  The Court will therefore dismiss BMZ's second claim without prejudice.

Given that BMZ has failed to state a claim against defendants, the Court will grant defendants' motion to dismiss.

## IV.  CONCLUSION

It is therefore

**ORDERED** that defendants' Corrected Motion to Dismiss [Docket No. 14] is GRANTED.  It is further

**ORDERED** that plaintiff's claims are **DISMISSED without prejudice**.  It is further

**ORDERED** that this case is closed.

DATED March 3, 2026.

                BY THE COURT:

                _____
                PHILIP A. BRIMMER
                Chief United States District Judge